## GRIFFITH *v.* THE STATE.

1. Cruelty to animals, as defined by our law, includes any willful act of omission or neglect whereby unjustifiable physical pain and suffering or death is caused or permitted to a domestic animal, and the omission or neglect to furnish an animal food sufficient for its sustenance, by its owner or keeper, which is willful, is a violation of the statute.
2. The jury were authorized to find from the evidence that the accused willfully omitted and neglected to furnish food and shelter to the horse alleged to have been cruelly treated, and that such omission resulted in the death of the animal.

　　　　　Argued December 15, 1902. — Decided January 8, 1903.

Indictment for cruelty to animals. Before Judge Holden. Madison superior court. October 31, 1902.

*Strickland & Green,* for plaintiff in error.
*David W. Meadow, solicitor-general,* contra.

LITTLE,· J.   Charlie Griffith was indicted for a misdemeanor, in the. superior court of Madison county, and it was specifically charged that the accused did unlawfully and willfully turn out, to go at large, a certain horse belonging to him, and omitted and neg- lected to feed and take care of said. horse, whereby unjustifiable physical pain and suffering and death were caused and permitted to be occasioned to the horse.   The trial resulted in a verdict of guilty. The accused asked for a new trial on the ground that the verdict was contrary to law and the evidence.   The motion was overruled, and he excepted.    Without going into a detailed statement of the evidence, we are of the opinion, after an examination of the record, that the jury were authorized to find the following to be the facts : The accused was the owner of a horse which, in the winter of 1901, was allowed to go at large, and to which during very bad weather he gave no food or shelter.   The horse trespassed on a neighbor's land, endeavoring to find food, where he remained for about a week. He was very poor and of considerable age.   The person to whose premises the horse came, by inquiry, ascertained that he belonged to the accused, whom he notified of its whereabouts and condition, and asked him to come and get the animal, which he did ; but in a very short time thereafter the horse returned, and remained on the premises of the neighbor until he died a few days afterward. Nothing was done to protect the horse, nor was he furnished any shelter or food.    There was some evidence to the effect that after the horse was down and unable to get up he appeared to be swol- len and otherwise diseased.   One witness testified that the accused said that he had turned the horse out to die.    There was also evi- dence that after the horse had returned the second time to the prem- ises of the neighbor where he died, the accused, who owned the animal; was notified of his ·whereabouts and condition.    The de- fendant in his statement said that he put the horse at a place where ·he had some land rented, and did not see the horse very often ; that when he was notified that the horse was sick, he brought him to his house ; that the horse was about twenty-four years old, and could do but little.    He carried him to the farm, and directed a person there to attend to him and take him up at night.    Afterwards he ascertained the horse had left the farm, but was not told where

he was until after he died.    He denied any want of care, or neg-
ligence, or intention to abandon the horse.    It is insisted on the
part of the plaintiff in error, that, in order to constitute cruelty to
animals, the act complained of must have been done with an evil
intent, and that the motive with which the act is done is the test
whether or not it is criminal.  It is also contended, that, to be guilty
of an offense under our statute, a person must be actuated by a
spirit of cruelty, and a disposition to inflict unnecessary pain and
suffering on an animal.    The point is further made that the State
did not show that the horse was in the custody of the defendant,
but on the contrary the evidence shows that it was in the custody
of a different person; that in order to constitute the offense with
which the accused is charged, it is necessary that it should be
shown that he had charge and custody of the animal; that the
evidence showed in this case that the defendant did what was rea-
sonable, with the information that he had; that no cruelty or will-
ful neglect which caused unjustifiable physical pain and suffering
or death to the horse was shown ; and that the verdict finding the
accused guilty was contrary to law and the evidence.

The accused was indicted under the Penal Code, § 703, which
reads as follows: "Every person who shall instigate, engage in, or
do anything in furtherance of an act of cruelty to a domestic ani-
mal, shall be punished as for a misdemeanor." By the same Code,
§ 705, the "cruelty" referred to is declared to include "every will-
ful act, omission or neglect, whereby unjustifiable physical pain,
suffering, or death is caused or permitted." These provisions are
based on an act approved October 20, 1879.  Prior to the passage of
that act there was in force an act which was approved March 1,
1875, entitled "an act for the prevention of cruelty to animals,"
and which declared that any person who should torture, torment,
deprive of necessary sustenance, cruelly beat or maltreat, etc., any
horse or other animal, should be guilty of a misdemeanor and pun-
ished in a named way.    The act of 1879, however, is very much
broader in its scope than the act of 1875, and in express terms re-
peals all previous acts on the subject.    The first section of this act
is, in substance, the code section first above referred to, while sec-
tion 5 contains the definition of "cruelty" found in the Civil Code,
§705, also above referred to.    Plainly, under the terms of these
two sections, the act of cruelty to a domestic animal, which is made

a misdemeanor, includes not only a willful act but a willful omission or a willful neglect in consequence of which unjustifiable physical pain, suffering, or death is caused or permitted to happen to a domestic animal.     In other words, a conviction may be sustained, under the terms of the code, not only for a willful act by which unjustifiable pain, suffering, or death is caused to an animal, but also when the evidence shows that a person whose duty it is to do an act or acts towards the care and sustenance of a domestic animal shall willfully omit or neglect to do that act, and pain, suffering, or death is occasioned by such omission or neglect.     Clearly, it is contemplated that a willful failure to afford shelter or necessary sustenance to a domestic animal, on the part of the owner or the person charged with the duty of maintaining the animal, is a violation of the terms of the act.     The second section of the act of 1879, following the declaration that an act of cruelty to a domestic animal shall be a misdemeanor, provides that any person finding any domestic animal abandoned and not properly cared for may apply to any justice of the peace of said county, who shall summarily decide whether such has been abandoned, etc.; thus indicating that an abandonment and failure properly to care for a domestic animal is an act of cruelty within the purview of the act.     Such must have been the natural and plain intent of the lawmakers in defining the "cruelty" which is made an offense against the laws of this State. It is no refinement of sentiment to declare that a domestic animal, such as a horse, which has given his powers and strength to the pleasure and prosperity of his owner, should, after his strength has been exhausted by labor, be sheltered and cared for by that owner. We have no fault to find with such a provision of the law, and none with that which calls into exercise the strong arm of the law to punish one guilty of a violation of a duty so natural and humane. As we understand our law on this subject, the owner or person having a domestic animal in charge may not abuse, misuse, or cruelly treat such animal; he is under a duty to afford his domestic animals reasonable shelter and sustenance.     He may not, therefore, when his horse is old and worn out, abandon him, or neglect, or fail willfully, to support and protect him.     And for a violation of law in any of these respects the owner or person having custody of the animal may be punished.     Under the evidence introduced on the part of the State, the jury were authorized in the present

case to find that the direct custody and control of the horse which it is alleged was cruelly treated was in the accused; that he turned him out to die; that the horse did not die from disease; that the accused failed to furnish the horse with food necessary to sustain him; that he gave him no shelter; and that all these acts and omissions were willful. It is true that in his statement the accused denied that he had willfully abandoned the horse; but even under this statement it is not asserted either that proper provision was made for the animal, or that any one else was charged with the duty of making such provision. Besides, it was the province of the jury to disregard the statement and to base their verdict on the evidence in the case. This they have apparently done, and that evidence is sufficient to support the verdict, which is not contrary to law.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., absent.*